The Full Commission has reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Lorrie L. Dollar and the briefs and arguments on appeal. The appealing party has not shown good ground to receive further evidence or to amend the holding of the Deputy Commissioners Opinion and Award. Accordingly, the Full Commission affirms the decision of the Deputy Commissioner and enters the following Opinion and Award.
***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties in their Pre-Trial Agreement which was filed on 12 July 1999, and at the hearing of the same date as:
 STIPULATIONS
1. The Industrial Commission has jurisdiction over the subject matter of this case, the parties are properly before the Commission, and the parties were subject to and bound by the provisions of the North Carolina Workers Compensation Act at all relevant times.
2. Managed Care USA, Inc., was the carrier on the risk.
3. An employee-employer relationship existed between the parties at all relevant times.
4. Plaintiffs average weekly wage was $220.15, which yields a compensation rate of $146.77, based upon the Form 22.
5. The issues for determination are:
a. Whether plaintiffs work duties have caused or significantly contributed to the development of plaintiffs bilateral carpal tunnel syndrome or other occupational disease;
b. If plaintiff contracted a compensable occupational disease, to what benefits may she be entitled under the Act? and,
c. Has plaintiff reached maximum medical improvement?
6. The parties stipulated the following exhibits into evidence:
a. Exhibit l-Form 18, filed 22 April 1997;
b. Exhibit 2-Form 19, dated 3 March 1998;
c. Exhibit 3-Form 22 with check stubs, nine pages;
d. Exhibit 4-Rich Square Medical Center, Inc., Record, nineteen pages;
e. Exhibit 5-Records of Dr. Meredith Anthony, twelve pages;
f. Exhibit 6-Records of Dr. John R. Leonard, III, nine pages; and,
g. Exhibit 7-Form 22, three pages.
***********
Based upon the entire record of evidence, the Full Commission enters the following:
 FINDINGS OF FACT
1. At the time of the hearing before the Deputy Commissioner on 19 July 1999, plaintiff was a thirty-seven year old female. She completed the tenth grade and is right-hand dominant. Since approximately 1988, plaintiff has been employed at Red Apple #43 in Aulander, North Carolina. Plaintiff weighed approximately 320 pounds in 1998.
2. As a deli worker at defendant-employers convenience store, plaintiff worked eight hours per day five days per week. Her duties included taking frozen chicken out of a forty-pound case, washing the chicken, and cleaning fat from the pieces with a knife. Each case held six buckets, and each bucket contained twenty-four pieces. Normally, the wings and legs had little, if any, fat to be removed. Plaintiff would hold the chicken pieces in her left hand and the knife in her right hand. On average, plaintiff would wash and prepare six bucket of chicken, which would take between two to three hours. Plaintiff also cooked food items, served customers, and cleaned-up in the food service area. Plaintiff normally worked the 2:00 p.m. to 10:00 p.m. shift.
3. In June of 1993, plaintiff reported pain and numbness in both hands while at her annual physical examination. However, no follow-up examinations were ordered. Between 1993 and 1994, plaintiff had two pregnancies. She subsequently had problems with hypertension and fluid retention.
4. By early 1998, plaintiff had difficulty grasping items with her hands and also had problems sleeping due to her hands. On 20 January 1998, plaintiffs family doctor, Delina Cooley, PA-C, of Rich Square Medical Center, referred her to East Carolina Neurology in Greenville for nerve conduction studies.
5. On or about 3 March 1998, Dr. Rakesh Jaitley, a board certified neurologist at East Carolina Neurology, performed nerve studies which suggested bilateral distal median entrapment neuropathy.
6. Plaintiff reported her diagnosis to Anne Ellis, the manager at Red Apple on or about 3 March 1998.
7. Plaintiff was medically excused from work from 16 June 1998 through 18 July 1998 by Delina Cooley, PA-C. Plaintiff has not worked for defendant-employer since 16 June 1998.
8. On or about 25 June 1998, plaintiff had steroid injections in her wrists.
9. Dr. Jaitley then excused plaintiff from work from 13 July 1998 through 19 August 1998.
10. On 21 August 1998, plaintiff sought treatment at Bertie County Health Associates in Windsor. Plaintiff was provided with an out-of-work excuse to rest at home until she had follow-up with an orthopedist.
11. On 1 September 1998, plaintiff was evaluated by Dr. John R. Leonard, III, a board certified neurosurgeon at East Carolina Neurosurgical Associates. She complained of symptoms being worse in her left hand. Therefore, Dr. Leonard scheduled decompression surgery for the left arm on 16 September 1998.
12. On 1 October 1998, Dr. Leonard released plaintiff to light duty work. However, defendant-employer did not provide light duty work.
13. By 10 November 1998, plaintiffs median nerve function was quite normal; and she also had normal strength in the left hand. Plaintiff was released to return to regular duty work on 30 November 1998. Dr. Leonard instructed plaintiff to return when she was ready for surgery on her right wrist.
14. Rather than return to Dr. Leonard, plaintiff sought additional out-of-work excuses from Bertie County Health Associates. However, neither physician on their staff is a neurosurgeon. Therefore, the continued out-of-work notes are not accepted as competent evidence as to whether plaintiff was capable of returning to work following the decompression of the left median nerve.
15. Once the compression of plaintiffs median nerve was relieved and once normal healing occurred, plaintiff had a complete recovery of her left hand. Her left hand was functionally better than it was prior to surgery. Plaintiff retains a five percent (5%) permanent partial impairment to her left hand, attributable to post-operative soreness and stiffness.
16. Plaintiff has not returned to work for defendant-employer since her release to return to work by Dr. Leonard, her treating neurosurgeon.
17. Plaintiff has not sought other employment since 30 November 1998.
18. Plaintiff received short-term disability benefits through an employer-funded plan for six months at a rate of seventy percent of her base salary.
***********
Based upon the foregoing findings of fact, the Full Commission concludes as follows:
 CONCLUSIONS OF LAW
1. Plaintiff bears the burden of proving each element of compensability in order to prove the existence of an occupational disease within the meaning of G.S 97-53(13). This requires the plaintiff to show that (1) the disease must be characteristic of a trade or occupation; (2) the disease must not be an ordinary disease of life to which the public is equally exposed outside of the employment; and (3) there must be proof of causation. Hansel v. Sherman Textiles, 304 N.C. 44, 283 S.E.2d 101(1981). In the instant case, plaintiff has failed to establish any of these elements by competent medical authority. G.S. 97-53(13).
2. There is likewise no evidence in the record to suggest that plaintiff suffered an injury by accident. G.S. 97-2(6).
***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission affirms the holding of the Deputy Commissioner and enters the following:
 AWARD
1. Plaintiffs claim is, and under the law must be, DENIED.
2. Defendant shall pay the costs for the hearing before the Deputy Commissioner and each side shall bear its own cost for the proceedings before the Full Commission.
 S/_______________ CHRISTOPHER SCOTT COMMISSIONER
CONCURRING:
S/_______________ DIANNE C. SELLERS COMMISSIONER
DISSENTING:
S/_____________ THOMAS J. BOLCH COMMISSIONER